STUART, Justice.
 

 Wakilii Brown was convicted of three counts of capital murder: the murders of Dotty Jemison and Cherea Jemison by one act or pursuant to one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975; the murder of Dotty Jemison during the commission of a first-degree robbery, see § 13A-5-40(a)(2), Ala.Code 1975; and the murder of Cherea Jemison during the commission of a first-degree robbery, see § 13A-5-40(a)(2), Ala.Code 1975. The jury, by vote of 10-2, recommended that Brown be sentenced to death. The trial court agreed with the jury’s recommendation and sentenced Brown to death. On appeal, the Court of Criminal Appeals affirmed Brown’s convictions and sentence.
 
 Brown v. State,
 
 74 So.3d 984 (Ala.Crim. App.2010). Brown petitioned this Court for certiorari review of the decision of the Court of Criminal Appeals. We granted the writ to address the procedures for determining the admissibility of the testimony of a child witness and to review Brown’s allegations of the improper admission of the testimony of a child witness, of prosecutorial misconduct, and of error in the trial court’s jury instructions. We affirm.
 

 Our resolution of the issues presented by Brown’s certiorari petition does not require an examination of the sufficiency of the evidence to sustain Brown’s convictions and sentence. The Court of Criminal Appeals provides a thorough recitation of the facts surrounding the offenses in
 
 Brown v. State,
 
 supra.
 

 Standard of Review
 

 Brown did not object at trial to the incidents of which he now complains; therefore, our review is for plain error.
 

 “ ‘ “Plain error is defined as error that has ‘adversely affected the substantial right of the appellant.’ The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal. As the
 
 *1043
 
 United States Supreme Court stated in
 
 United States v. Young,
 
 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the plain-error doctrine applies only if the error is ‘particularly egregious’ and if it ‘seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.’ See
 
 Ex parte Price,
 
 725 So.2d 1063 (Ala.1998),
 
 cert. denied,
 
 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999).” ’
 

 “Ex parte Brown,
 
 11 So.3d 933, 935-36 (Ala.2008)(quoting
 
 Hall v. State,
 
 820 So.2d 113, 121-22 (Ala.Crim.App.1999)).”
 

 Ex parte Billups,
 
 [Ms. 1090554, December 30, 2010] — So.3d-,-(Ala.2010). Additionally, Rule 45A, Ala. R.App. P., provides:
 

 “In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
 

 Discussion
 

 I. Admissibility of testimony of a child ivitness.
 

 Brown contends that Alabama courts have not squarely discussed the procedures necessary to address the substantial risk of prejudice presented by the admission of testimony from a child witness. First, Brown contends that this Court should adopt a per se rule that, when a trial court examines a child witness to determine the child’s understanding of the duty to testify truthfully, the examination must be conducted outside the presence of the jury. Second, Brown maintains that a trial court, in addition to determining whether a child witness understands the duty to testify truthfully, must also determine whether the child’s testimony is reliable. Additionally, Brown argues that the trial court erred in his case in conducting the voir dire of the child witness in the presence of the jury and then in admitting her testimony.
 

 A. Rule 603, Ala. R. Evid., determination for the admissibility of a child witness’s testimony.
 

 Brown urges this Court to adopt a per se rule requiring that a trial court’s examination of a child witness to determine whether the child understands the duty to testify truthfully must occur outside the presence of the jury. Rule 603, Ala. R. Evid., provides:
 

 “Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness’s conscience and impress the witness’s mind with the duty to do so.”
 

 According to Brown, the trial court’s examination of the child witness should occur outside the presence of the jury to prevent the trial court from invading the jury’s exclusive role of determining the credibility of the witness. The Nebraska Supreme Court, when confronted with this issue, stated:
 

 “In his fifth assignment of error, Fleming asserts, without authority, that the district court erred in conducting F.K’s and A.S.’s competence examinations before the jury. The State argues that there was no error, as child witnesses are presumed competent, and there is no requirement that such hearings be held out of the presence of the jury.
 

 “This issue has been considered in several jurisdictions. For example, the Pennsylvania Supreme Court has
 
 *1044
 
 adopted a per se rule that child witnesses are to be examined for competence outside the presence of the jury. The court noted that
 

 “ ‘[e]ven with a cautionary instruction ... permitting the competency proceedings to take place in the presence of the jury inevitably permeates into the veracity determination assigned exclusively to the jury. Particularly in cases such as this where credibility is the central issue, the likely impact of conducting the competency proceedings in the presence of the jury cannot be diminished.’
 

 “The Colorado Supreme Court specifically rejected this per se rule in
 
 People v. Wittrein[,
 
 221 P.3d 1076, 1081 (Colo.2009) ]. Instead, that court concluded that while it was
 

 “ ‘the better approach [to examine outside the presence of the jury], any prejudice ... does not rise to the level of reversible error. The prosecutor asked [the child victim] simple questions that directly related to her ability to be truthful and to relate facts to the jury. The jury was not told the purpose of the testimony and was excused before the judge ruled on ... competency.’
 

 “Similarly, the New Mexico Court of Appeals noted in
 
 State v. Manlove[,
 
 79 N.M. 189, 441 P.2d 229 (N.M.Ct.App.1968) (superseded by state evidence rule on other grounds as stated in
 
 State v. Hueglin,
 
 130 N.M. 54, 16 P.3d 1113 (N.M.Ct.App.2000)) ], that it was not error for the trial court judge to inquire into the competence of a child witness in the presence of the jury. The
 
 Manlove
 
 court noted that such decisions were in the sound discretion of the trial court, though the court did ‘feel that generally the better practice would be to conduct this examination outside the presence of the jury.’ [79 N.M. at 193, 441 P.2d at 233.]
 

 “Still other jurisdictions have concluded that it was not error, or in some instances was even preferable, to have the competency proceedings take place in the presence of the jury. These jurisdictions argue that this type of questioning ‘assists the jurors in evaluating independently the child’s qualifications as a witness.’
 
 [Brown v. United States,
 
 388 A.2d 451, 458 (D.C.1978).] The Wisconsin Supreme Court has also noted that where there was no objection and the jury was instructed that it was the sole judge of the credibility of the witnesses, as well as the weight and effect of the witnesses, it was not error to hold proceedings in the presence of the jury.
 
 [Collier v. State,
 
 30 Wis.2d 101, 140 N.W.2d 252 (1966).]
 

 “We believe that the best practice is for any hearings on the competency of child witnesses to take place outside the presence of the jury. However, the failure of the trial court to do so is not necessarily reversible error. Instead, an appellate court must consider whether the defendant was prejudiced by the trial court’s actions.”
 

 Nebraska v. Fleming,
 
 280 Neb. 967, 975, 792 N.W.2d 147, 155-56 (2010) (footnotes omitted).
 

 Like the Nebraska Supreme Court, we decline to establish a per se rule requiring a trial court’s examination of a child witness to determine the child’s understanding of the duty to testify truthfully to be conducted outside the presence of the jury. Although it may be the better practice to conduct such an examination outside the presence of the jury to avoid a risk of invading the province of the jury with regard to determining the credibility of a child witness, the fact that the examination occurs in the presence of the jury
 
 *1045
 
 does not automatically create prejudice and require reversal. To establish reversible error in this regard, a defendant must show that he or she was prejudiced by the trial court’s actions.
 

 In this case, Brown contends that he was prejudiced when the trial court examined T.S., the child witness, to determine her understanding of her duty to testify truthfully in the presence of the jury because, he says, “the trial court improperly invaded the province of the jury and bolstered T.S.’s credibility.” The record establishes that, at the close of the examination, the trial court asked T.S., “If I permit you to testify, will you tell the truth?” After T.S. responded “yes, sir,” and neither the State nor Brown objected, the trial court administered the oath to T.S. and admitted her testimony. According to Brown, “[tjhis exchange conveyed to the jury in unequivocal fashion that the trial court believed that [T.S.] would tell the truth.” (Brown’s brief, at p. 43.) Because there was no objection on this basis at trial, we review Brown’s argument for plain error.
 

 Initially, we note that the trial court’s examination of T.S. adequately established that she understood her role as a witness at a trial and understood that the court expected her to tell the truth when she testified. See Rule 608, Ala. R. Evid. At the conclusion of the examination, the trial court did not make an affirmative, explicit finding that T.S. would testify truthfully; instead, after administering the oath, it simply allowed the State to begin its direct examination. Additionally, when instructing the jury, the trial court stated:
 

 “[Ijt’s the jury’s exclusive function to decide the facts of the case. As the trial judge, I have absolutely nothing to do with your decision as to the facts. It is my duty to rule on the admissibility of the evidence and charge you as to the law. It is your duty to take the evidence that’s been allowed in the case, disregard any evidence excluded by the court, and take the allowed evidence and decide what the facts are in the case. You decide what actually happened on the occasion testified about and complained about. And when you’ve decided these facts, then you apply the law as I give it to you in my charge and thereby arrive at your verdict.
 

 “Now, as I’ve said, you are the trier of facts. You decide what actually happened from the testimony from the witness stand and from the exhibits introduced into evidence.
 

 “It’s the duty of the jury to reconcile all of the testimony in the case and make it all speak the truth, if you can do so. If you cannot, of course, [it] is a matter of discretion with the jury what testimony you will believe and what testimony you will disregard.
 
 There is no presumption that a witness while testifying is telling the truth. The credibility of a witness while testifying in a case is a decision of the jury. You have a right to take all the testimony in the case, reject what you think is untrue, and consider only that part which you think is true. That applies to the testimony of all witnesses in the case. If you think a witness has told the truth as to some matters and that his or her testimony is inaccurate or untrue as to other matters, then you have the right in your decision to believe that which you can find to be true and disregard that which you think is untrue.
 
 If you find that any witness in this case has willfully or corruptly testified falsely as to a material matter, then the law gives you the right in your discretion to disregard that witness’s entire testimony.
 

 
 *1046
 
 “You also have the right to consider any interest, bias, friendship or relationship, or any other cause that might in your judgment cause a witness to depart from the truth. All of these things are for you to consider. When you sit in the jury box, you’re just called upon to do like you do elsewhere, and that’s to use your common sense. Therefore, you have the right not only to listen to the witnesses, but you can consider the manner and demeanor of the witnesses when they testify from the witness stand and determine just what weight you will give a particular witness’s testimony.”
 

 (Emphasis added.)
 

 The record does not establish that the trial court committed plain error when it conducted its examination of T.S. in the presence of the jury to determine whether she understood her duty to testify truthfully. The trial court did not make an affirmative, explicit finding that T.S. would testify truthfully; it simply allowed counsel to begin direct examination after its examination of T.S. Nor did the trial court state before the jury that it believed that T.S. would tell the truth. Cf.
 
 People v. Rush,
 
 250 Ill.App.3d 530, 535-36, 190 Ill.Dec. 1, 620 N.E.2d 1262, 1266 (1993) (holding that a new trial was necessary because the trial court invaded the province of the jury when in the presence of the jury the trial court stated, “I know you were telling the truth”). In this case, neither the trial court’s words nor its actions created the impression that it found T.S.’s testimony credible. Therefore, we cannot conclude that the trial court bolstered T.S.’s credibility.
 

 Moreover, the jury was instructed that it was the sole judge of the credibility of the witnesses, as well as the weight and effect to give the witnesses’ testimony. None of the trial court’s statements during its examination of T.S. can be considered “ ‘calculated to control the jury in its consideration of the weight to be given to testimony.’ ”
 
 Dixon v. State,
 
 448 So.2d 457, 459 (Ala.Crim.App.1984) (quoting
 
 Richardson v. State,
 
 403 So.2d 293, 295 (Ala.Crim.App.1981)). Hence, we cannot conclude that, when the trial court conducted its examination of T.S. in the presence of the jury, the trial court invaded the province of the jury and that Brown was prejudiced. For these reasons, we conclude that plain error did not occur when the trial court examined T.S. in the presence of the jury to determine that she understood her duty to testify truthfully.
 

 As a part of this issue, Brown contends that, by calling T.S. “sweetheart” and allowing her to testify after she indicated that she would tell the truth, the trial court signaled to the jury that it favored T.S. and conveyed to the jury that it believed T.S. was a credible witness. After reviewing the exchange between T.S. and the trial court, we conclude that Brown is overreading the trial court’s words and actions. We agree with the Court of Criminal Appeals that a fairer assessment of the trial court’s words and actions is that the trial court was trying to ease T.S.’s nerves. Indeed, Brown’s counsel complimented T.S.’s attire and referred to her as “hon.” The record clearly shows that the trial court and counsel for both sides were trying to ease T.S.’s nerves when she was testifying; common sense dictates that a jury would recognize that fact.
 

 B. Determination of the reliability of a child witness’s testimony.
 

 Brown also urges this Court to require that a trial court, when determining a child witness’s understanding of the duty to testify truthfully, also determine the reliability of the child witness’s testimony.
 

 
 *1047
 
 Rule 601, Ala. R. Evid., provides that “[e]very person is competent to be a witness except as otherwise provided in these rules.” The Advisory Committee’s notes to that rule explain:
 

 “The starting point for applying Rule 601 is that all witnesses are competent except as otherwise provided under other Alabama Rules of Evidence.... [Rule 601] acknowledges the prevailing sentiment that very few persons are incapable of giving testimony useful to the trier of fact and that the historic grounds of incompetency — mental incapacity, conviction, etc. — should go to the credibility of the witness and the weight the trier of fact gives to the witness’s testimony. See H. Weihofen,
 
 Testimonial Competence and Credibility,
 
 34 Geo. Wash. L.Rev. 53 (1965); E. Cleary,
 
 McCormick on Evidence
 
 § 71 (3d ed.1984) (referring to rules of incompetency as ‘serious obstructions to the ascertainment of truth’); C. Mueller & L. Kirkpatrick, 3
 
 Federal Evidence
 
 § 232 (2d ed.1994); Comment,
 
 The Mentally Deficient Witness: The Death of Incompetency,
 
 14 Law & Psychol. Rev. 106 (1990).
 

 “While Rule 601 imposes no requirement of testimonial competency, it provides that incompetency may arise ‘as otherwise provided in these rules.’ Both academic writings and judicial opinions suggest that this provision vests in the trial court the discretion to preclude a witness from testifying in extraordinary circumstances when the witness possesses some significant testimonial deficiency. That discretion is said to arise when the witness’s deficiency renders the testimony inadmissible because of its being irrelevant (Rule 401) or too prejudicial (Rule 403), or when the witness is without personal knowledge (Rule 602) or is unable to understand the obligation to tell the truth (Rule 603). See, e.g.,
 
 United States v. Ramirez,
 
 871 F.2d 582 (6th Cir.), cert. denied, 493 U.S. 841 (1989);
 
 United States v. Odom,
 
 736 F.2d 104 (4th Cir.1984);
 
 United States v. Lightly,
 
 677 F.2d 1027 (4th Cir.1982);
 
 State v. Fulton,
 
 742 P.2d 1208 (Utah 1987), cert. denied, 484 U.S. 1044 (1988). See also J. Weinstein & M. Berger,
 
 Weinstein’s Evidence
 
 ¶ 601[04], at 601-27 (1990). It should be noted, however, that the suggestion of these authorities exceeds their reality in terms of witnesses actually excluded by the courts. Indeed, as one author has observed, an analysis of the decided cases reveals that the application of Rule 601 is ‘closer to an irrebuttable presumption of competency for every witness.’ Comment,
 
 The Mentally Deficient Witness: The Death of Incompetency,
 
 14 Law & Psy-chol. Rev. 106, 114 (1990). The beginning premise remains:
 
 all witnesses are competent and any testimonial deficiency goes to weight rather than admissibility.
 
 See F. Weissenberger,
 
 Weissenberger’s Federal Evidence
 
 § 601.2, at 181 (1987); 3 D. Louisell & C. Mueller,
 
 Federal Evidence
 
 § 252 (1979). Compare
 
 United States v. Van Meerbeke,
 
 548 F.2d 415 (2d Cir.1976), cert. denied, 430 U.S. 974 (1977). This competency is to be accorded children in all cases of abuse, whether sexual or otherwise.”
 

 (Emphasis added.)
 

 The effect of the adoption of Rule 601, Ala. R. Evid., has been explained as follows:
 

 “Under pre-rules Alabama law, a witness was competent to testify if the witness understood the significance of the oath and was able to observe, recollect, and narrate what had occurred or what the witness had sensed. If competency was questioned, the burden of proving
 
 *1048
 
 that the proffered witness was competent was on the proponent. However, under Rule 601 every witness is deemed competent unless otherwise provided by the rules, which shifts the burden to the opponent who must prove a witness to be incompetent. This shift occurs even if Rule 601 is read as a declaration of competency per se, because even under this broad interpretation the rule is limited by other applicable rules.
 

 “Pre-rules Alabama law allowed finding a witness incompetent due to drunkenness, infancy, insanity, or a conviction for perjury. Although these same witnesses are now presumed competent under Rule 601, some may not be permitted to testify because of several other factors, such as those previously discussed relating to Rules 401 through 403 and 601 through 605. A person who is an infant or mentally impaired may still be disqualified to testify as a witness under the rules. The principal difference is that the burden of proof has been shifted. The rules provide that a witness is competent and will be allowed to testify, unless the opponent can establish a basis for disqualification under one of the rules of evidence. On the other hand, common law required the proponent to prove the witness’s competency. In either event, the issue of competency is decided by the trial judge.”
 

 Joseph A. Colquitt & Charles W. Gamble,
 
 From Incompetency to Weight and Credibility: The Next Step in an Histone Trend,
 
 47 Ala. L.Rev. 145, 172-73 (Fall 1995) (footnotes omitted).
 

 Thus, the adoption of Rule 601, Ala. R. Evid., created in essence a presumption of competency for every witness, and it is the burden of the opponent to challenge the admissibility of the witness’s testimony on grounds other than Rule 601, Ala. R Evid. See, e.g., Rule 602, Ala. R. Evid., and Rule 403, Ala. R. Evid.
 

 Brown recognizes that under Rule 601, Ala. R. Evid., all witnesses, including children, are competent to testify. He further recognizes the trial court’s duty to determine a child witness’s ability to tell the truth. See Rule 603, Ala. R. Evid. Brown maintains, however, that, in addition to determining whether a child witness understands his or her responsibility to tell the truth when testifying, the trial court should also determine the reliability of the child witness’s testimony. Brown reasons that, because of a child’s age, the child witness may be unable to “truly register” the occurrence he or she observed or the child’s memory may have eroded over time, may be distorted or a false creation, or may have been influenced by the suggestion of adults. According to Brown, because the child witness believes his or her testimony to be true, despite its being the result of imagination, distortion, or suggestion, the admission of the child witness’s testimony without an examination to determine its reliability presents a substantial risk that the testimony will unfairly prejudice the defendant and will mislead the jury.
 

 We decline Brown’s invitation to require a trial court to conduct an examination to determine the reliability of a child witness’s testimony. The concerns raised by Brown regarding a child witness’s testimony are adequately addressed by our Rules of Evidence. Rule 602, Ala. R. Evid., provides that a witness’s testimony may be excluded if the witness lacks personal knowledge of the matter. Rule 403, Ala. R. Evid., provides that testimony may be held inadmissible if the probative value of the testimony is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury. If a party has concerns about the reliabili
 
 *1049
 
 ty of a child witness’s testimony, then the party must present his or her concerns in an objection for the trial court based on the Rules of Evidence. Indeed, a trial court’s analysis, conducted after a properly presented Rule 403, Ala. R. Evid., objection, adequately balances concerns regarding the probative value of the child witness’s testimony against unfair prejudice resulting from the frailty of a child’s memories, the tendency of a child to form false memories that he or she believes to be true, and a child’s susceptibility to suggestion that may taint the child’s memory.
 
 [1]
 
 Hence, Brown’s concerns about the admissibility of a child witness’s testimony based on the reliability of the testimony are adequately addressed by our present rules and procedures. See also
 
 Utah v. Fulton,
 
 742 P.2d 1208, 1218 (Utah 1987) (addressing the effect of Rule 601, Utah R. Evid., which is identical to Rule 601, Ala. R. Evid., on the admissibility of a child’s testimony and concluding “that Rule 403[, Utah R. Evid.,] adequately protects a defendant’s right to a fair trial and gives him or her an opportunity to raise concerns [with regard to the reliability of a child’s testimony] that prior to our adoption of Rule 601, might have been addressed in a competency hearing”).
 

 In this case, Brown contends that plain error occurred in the admission of T.S.’s testimony because, he says, she lacked personal knowledge of Cherea’s death, see Rule 602, Ala. R. Evid., and because the probative value of her testimony was substantially outweighed by the danger of unfair prejudice and of misleading the jury. See Rule 403, Ala. R. Evid.
 

 The record establishes that, at the time of Brown’s trial, T.S., who was Cherea and Brown’s daughter, was 11 years old. She testified that she was 4 years old the last time she saw Cherea. She explained that she and her brothers were sleeping in their bedroom when she was awakened by Brown and Cherea, who were “fussing”. According to T.S., she looked out her bedroom door and saw Cherea “laying on her back” “in the hallway” and there was blood “on her chest.” Brown was standing beside Cherea’s body.
 

 Rule 602, Ala. R. Evid., provides:
 

 “A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness’s own testimony.”
 

 A review of T.S.’s testimony establishes that T.S. had personal knowledge of the matter as to which she testified. T.S. testified about her recollection of the house she and Cherea were living in and the last time she saw Cherea. Therefore, Brown’s contention that plain error occurred in the admission of T.S.’s testimony based on her lack of personal knowledge is not supported by the record.
 

 Brown also contends that the trial court erred in admitting T.S.’s testimony because, he says, the probative value of her testimony was substantially outweighed by the danger of unfair prejudice and of misleading the jury. Brown argues that T.S.’s memory of the event was distorted by time because the event about which she testified occurred seven years
 
 *1050
 
 before the trial when she was four years old and that her memory of the event had been corrupted by suggestion because she had discussed her testimony with the prosecutor and had been living with a lead witness for the State. In support of his argument, Brown points out that T.S. was unable to remember other events from the relevant time period and that T.S.’s recollection of seeing Cherea lying on the floor in the hallway conflicted with the forensic evidence. Brown reasons that these factors indicate that T.S.’s testimony was unreliable, and he argues that T.S.’s testimony, therefore, should have been excluded because, he says, it was unduly prejudicial and misled the jury.
 

 Rule 403, Ala. R. Evid., provides that, “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....”
 

 The record does not support a conclusion that T.S.’s testimony should have been excluded pursuant to Rule 403, Ala. R. Evid. T.S.’s testimony consisted of her recollection of the last time she saw Cher-ea; she testified about her recollection of simple facts, providing circumstantial evidence of Brown’s guilt. T.S. testified that her last memory of Cherea was Cherea lying on the hall floor with blood on her chest and Brown standing over her body; she did not testify that she saw Brown stabbing Cherea. T.S.’s testimony did not involve an exercise of contemporaneous judgment beyond the comprehension of a child, did not indicate that she was precocious, and did not provide details beyond the simple observations of a child. Indeed, nothing in the record indicates that T.S.’s memory of the event was tainted or was the product of suggestive or biased interviews. Therefore, we conclude that the probative value of T.S.’s testimony was not substantially outweighed by the danger of unfair prejudice or of misleading the jury. Consequently, the trial court did not commit plain error in admitting T.S.’s testimony. T.S.’s testimony was properly presented to the jury for the jury to determine its weight and credibility. As the Court of Criminal Appeals held, “[T.S.’s] age at the time of the murders, the length of time between the murders and the trial, and the reliability of T.S.’s memory were considerations that went to the weight of her testimony rather than its admissibility.”
 
 Brown,
 
 74 So.3d at 1006.
 

 II. Prosecutorial misconduct.
 

 Brown contends that a comment made during the prosecutor’s rebuttal closing argument in the guilt phase of his trial constitutes plain error. Specifically, Brown argues that the prosecutor improperly injected his personal opinion of Brown’s guilt when he argued: “My vote was cast a long time ago when I charged him with what he did.” According to Brown, the prosecutor’s statement amounted to reversible error because, he says, the prosecutor improperly expressed his personal opinion of Brown’s guilt, conveyed to the jury that his personal opinion of guilt was based on information other than the evidence presented at trial, and improperly implied that his decision to charge Brown initially was indicative of Brown’s guilt.
 

 In
 
 United States v. Young,
 
 470 U.S. 1, 18, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the United States Supreme Court recognized the following two dangers that may occur when a prosecutor expresses his or her personal opinion concerning the guilt of the accused:
 

 “[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defen
 
 *1051
 
 dant and can thus jeopardize the defendant’s right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor’s opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government’s judgment rather than its own view of the evidence.”
 

 In this case, throughout the prosecutor’s closing argument, he recited the evidence, argued his interpretation of the evidence, and stated his belief that the State’s evidence proved beyond a reasonable doubt that Brown was guilty. Although we agree with Brown that the prosecutor’s statement that his vote was cast when he charged Brown with the offenses constituted an improper expression of the prosecutor’s personal opinion, we conclude that when that comment is read in the context of his entire argument it does not rise to the level of plain error. First, the comment was made during the prosecutor’s recitation of the evidence that had been presented to the jury; therefore, the comment does not suggest that the prosecutor’s opinion of Brown’s guilt was based on evidence not presented to the jury. Thus, we cannot conclude that Brown’s “right to be tried solely on the evidence presented to the jury” was jeopardized in this regard.
 

 Moreover, the prosecutor’s statement, when viewed in the context of his entire closing argument, does not lend itself to the conclusion that the jury should trust the State’s assessment of the evidence rather than its own. In
 
 Quinlivan v. State,
 
 579 So.2d 1386, 1387 (Ala.Crim.App.1991), the Court of Criminal Appeals held that the prosecutor’s argument, which included the following statements, rendered Quinlivan’s trial unfair:
 

 “I’m very proud to represent this case.
 
 I’m not obliged to try any case that I don’t want to try. I’m commanded by the law of Alabama as a District Attorney to prosecute the guilty and protect the innocent.”
 

 In concluding that reversible error had occurred, the Court of Criminal Appeals stated:
 

 “[T]he prosecutor’s argument was nothing more than a blatant statement of his personal belief in the appellant’s guilt. His comments expressly state that he tries only the cases that he wants to try and, consequently, chooses to prosecute only those defendants who are, as a matter of fact, guilty.”
 

 579 So.2d at 1389.
 

 The alleged error in this case, however, does not rise to the level of reversible error in
 
 Quinlivan.
 
 Unlike the prosecutor’s comments in
 
 Quinlivan,
 
 which emphasized the prosecutor’s duty to prosecute the guilty, the prosecutor’s statement in this case did not suggest that he, as a prosecutor, prosecuted
 
 only
 
 the guilty. Therefore, we cannot conclude that the prosecutor’s comment improperly infected the jury in this regard.
 

 The United States Supreme Court has stated that, when considering a prosecutor’s closing argument, the standard is whether the argument “ ‘so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ ”
 
 Darden v. Wainwright,
 
 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting
 
 Donnelly v. DeChristoforo,
 
 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The argument is to be viewed in its entirety, and, to justify reversal, the argument must have resulted in substantial prejudice to the defendant.
 
 Coral v. State,
 
 628 So.2d 954, 985 (Ala.Crim.App.1992).
 

 Although we do not condone the prosecutor’s statement that “[his] vote was cast a long time ago when [he] charged [Brown] with what he did” because it is an
 
 *1052
 
 improper expression of the prosecutor’s personal opinion and was not necessary to answer defense counsel’s assertions that the evidence did not support a verdict finding Brown guilty, the comment does not rise to the level of plain error. “Viewed in context, the prosecutor’s statements, although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to the miscarriage of justice.”
 
 United States v. Young,
 
 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).
 

 III. Jury-instruction errors.
 

 First, Brown contends that the trial court’s jury instruction defining “reasonable doubt” confused and misled the jury, violating the Due Process Clause. Specifically, he argues that the Court of Criminal Appeals erred in holding that the instruction did not violate the principles in
 
 Cage v. Louisiana,
 
 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), and in
 
 Victor v. Nebraska,
 
 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Because Brown did not object at trial to the trial court’s reasonable-doubt instruction, our review is for plain error.
 

 To sustain a criminal conviction, the government must establish beyond a reasonable doubt every element of the offense charged.
 
 In re Winship,
 
 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In
 
 Cage,
 
 the United States Supreme Court held that a trial court’s instruction to the jury that “equated a reasonable doubt with a ‘grave uncertainty5 and an ‘actual substantial doubt,’ and stated that what was required was a ‘moral certainty’ that the defendant was guilty” could have been interpreted by a reasonable juror “to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.” 498 U.S. at 41. In
 
 Estelle v. McGuire,
 
 502 U.S. 62, 72 and n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the United States Supreme Court made clear that the proper inquiry was whether there is a reasonable likelihood that the jury
 
 did
 
 apply the instruction in an unconstitutional manner, not whether it
 
 could
 
 have applied it in an unconstitutional manner. In
 
 Victor,
 
 the United States Supreme Court emphasized that “[t]he constitutional question ... is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the
 
 Winship
 
 standard.” 511 U.S. at 6. In discussing one of the jury instructions challenged in
 
 Victor,
 
 the United States Supreme Court recognized that it had stated that “ ‘[p]roof to a “moral certainty” is an equivalent phrase with “beyond a reasonable doubt.” ’
 
 Fidelity Mut. Life Ass’n v. Mettler,
 
 185 U.S. 308, 317, 22 S.Ct. 662, 46 L.Ed. 922 (1902) (approving reasonable doubt instruction cast in terms of moral certainty).” 511 U.S. at 12. The United States Supreme Court acknowledged that historically the phrase “moral certainty” in a jury instruction meant “the highest degree of certitude based on [the] evidence” but that the term may have lost its historical meaning over time. 511 U.S. at 11. The United States Supreme Court, however, concluded that when an instruction equated moral certainty with proof beyond a reasonable doubt the instruction satisfied the requirements of the Due Process Clause and was constitutionally sufficient. The United States Supreme Court emphasized that, although it did not condone the use of the phrase “moral certainty,” if the jury was instructed that its decision was to be based on the evidence in the case, then the jury understood that moral certainty was associated with the evidence of the case and no constitutional error occurred. Additionally, the United States Supreme Court addressed the use of the phrase “substantial doubt” and emphasized that when that
 
 *1053
 
 phrase was used in context to convey the existence rather than the magnitude of doubt there was no likelihood that jury applied the charge unconstitutionally.
 

 In this case, the trial court, throughout its instruction to the jury, reminded the jury consistently that its exclusive function was to decide the facts of the case. For example, the trial court instructed the jury:
 

 ‘You decide what actually happened on the occasion testified about and complained about. And when you’ve decided these facts, then you apply the law as I give it to you in my charge and thereby arrive at your verdict.
 

 “Now, as I’ve said, you are the trier of the facts. You decide what actually happened from the testimony from the witness stand and from the exhibits introduced into evidence.”
 

 With regard to the definition of “reasonable doubt,” the trial court instructed the jury:
 

 “You will want to know what a reasonable doubt is. That is sometimes rather difficult to define. When I say that the State is under the burden of proving guilt beyond a reasonable doubt and to a moral certainty, that does not mean that the State must prove an alleged crime beyond every imaginable or speculative doubt and beyond all possibility of mistake because that would be impossible. A reasonable doubt means an actual, substantial doubt arising out of the testimony in this case, or it could arise from the lack of testimony in this case. It is a doubt for which a reason can be assigned.
 

 “And the expression ‘to a moral certainty’ means practically the same thing as beyond a reasonable doubt. Because if you’re convinced to a point you no longer have a reasonable doubt, then you are convinced to a moral certainty.”
 

 We conclude that the trial court’s reasonable-doubt instruction did not lead the jury here to convict on a lesser showing than due process requires. The trial court emphasized that the jury’s decision was to be based upon the evidence. The trial court defined the phrase “moral certainty” as being a synonym for “reasonable doubt” and explained that a reasonable doubt arose from the evidence in the case or the lack of evidence. Therefore, because the trial court informed the jury that its decision had to be based upon the evidence, no reasonable likelihood exists for a conclusion that the jury would have disassociated the phrase “moral certainty” from the evidence.
 

 Additionally, there is no reasonable likelihood that the jury would have equated a reasonable doubt with a substantial doubt. The trial court made clear that the term “substantial” was used in the sense of existence, i.e., a doubt arising from the evidence or the lack of evidence. Nothing in the instruction lends itself to the conclusion that “substantial doubt” refers to the magnitude of doubt. Instead, the trial court stated, “[i]t is a doubt for which a reason can be assigned.” Therefore, no reasonable likelihood exists that the jury would have interpreted the trial court’s instruction as “allowing] a finding of guilt based on a degree of proof below that required by the Due Process Clause.” 498 U.S. at 41.
 

 Viewing the trial court’s jury instruction in its entirety, we hold that the trial court did not commit plain error when instructing the jury on the concept of reasonable doubt. See
 
 Ex parte Beavers,
 
 598 So.2d 1320, 1325 (Ala.1992) (holding a similar reasonable-doubt instruction did not violate Cage).
 

 
 *1054
 
 Brown also contends that plain error occurred when the trial court failed to instruct the jury that a robbery committed as a “mere afterthought” of the killing is not sufficient to support a conviction for murder made capital because the murder was committed during the course of a first-degree robbery or an attempt thereof. Specifically, he argues that the trial court’s instruction that the murder must occur “in the course of or in connection with the commission of or in the immediate flight from the commission of the robbery” did not adequately instruct the jury that “a robbery committed as a ‘mere afterthought’ ... will not sustain a conviction under § 13A-5-40(a)(2)[, Ala.Code 1975,] for the capital offense of murder-robbery.”
 
 Connolly v. State,
 
 500 So.2d 57, 63 (Ala.Crim.App.1985).
 

 A review of the trial court’s instructions, however, fails to establish that plain error occurred. The trial court specifically instructed the jury that “the intent to rob and the intent to kill would have to coexist in the defendant’s mind in order for the capital offense to occur.” Although the trial court did not state specifically that for the jury to find Brown guilty of capital murder-robbery the taking of the property could not be a mere afterthought of the murder, the trial court’s instruction adequately communicated the law by instructing the jury that the robbery had to occur “during” the course of the murder and that the intent to murder and the intent to rob had to coexist. Plain error did not occur in this regard. See
 
 Ex parte Windsor,
 
 683 So.2d 1042, 1058-60 (Ala.1996);
 
 Reeves v. State,
 
 807 So.2d 18, 42-44 (Ala.Crim.App.2000); and
 
 Woods v. State,
 
 789 So.2d 896, 932-33 (Ala.Crim.App.1999) (recognizing that although the taking of property as a mere afterthought will not support a capital-murder conviction based on an underlying robbery, the trial court does not have to use the term “mere afterthought” in its jury instructions on the robbery element of the capital murder).
 

 Conclusion
 

 Based on the foregoing, the judgment of the Court of Criminal Appeals is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and WOODALL, BOLIN, PARKER, and SHAW, JJ., concur.
 

 MURDOCK, J., concurs in the result.
 

 MAIN and WISE, JJ., recuse themselves.
 
 *
 

 [1]
 

 . Because we conclude that a Rule 403 analysis will adequately address a party's concerns about the reliability of a witness’s testimony and satisfy the Due Process Clause, we decline Brown’s invitation to apply the test for determining the reliability of eyewitness testimony set forth by the United States Supreme Court in
 
 Neil
 
 v.
 
 Biggers,
 
 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), to a determination of the reliability of a child witness’s testimony.