WINDOM, Judge.
Montez Spradley appeals his capital-murder conviction, his conviction for intimidating a witness, and his resulting sentences. Spradley was convicted of murder made capital because he shot and killed Marlene Jason during the course of a robbery, see § 13A-5-40(a)(2), Ala.Code 1975, and of intimidating a witness, see § 13A-10-123, Ala.Code 1975. The jury, by a vote of 10 to 2, recommended that Sprad-ley be sentenced to life imprisonment without the possibility of parole. The circuit court then ordered and received a presen-tence report. After holding a judicial sentencing hearing, the circuit court rejected the jury’s recommendation and sentenced Spradley to death for his capital-murder conviction and to 20 years in prison for his conviction for intimidating a witness.
On January 9, 2004, Marlene Jason’s body was found lying on the side of a road in Birmingham. Nancy Dempsey, a nurse and part-time pizza-delivery employee, testified that on that evening she was delivering pizzas on Second Way Northwest when she discovered Jason’s body. Dempsey could not detect a pulse, and she telephoned emergency 911. Dr. Gary Simmons, a medical examiner with the Jefferson County Coroner/Medical Examiner Office, testified that Jason had suffered blunt-force trauma and that she had died as a result of a gunshot wound to her head.
The lead investigator, Det. Don Edge with the Jefferson County Sheriffs Office, testified that when he arrived at the scene, *777 he found Jason on the ground near her car. Jason’s car was parked on the street in front of her house and was still running. The trunk of the car was open. A .40 caliber shell casing was found near Jason’s body. Jason’s purse was not in her car or in her house, so Det. Edge contacted Jason’s credit-card company to see if there had been activity on any of her accounts after her death. Det. Edge testified that Jason’s USAA Mastercard had been used on Friday, January 9, 2004, after her death, at the Roger Jolly Chevron, and again on Sunday at various service stations around town. Det. Edge further testified that Lt. Phillip Green went to the various locations where Jason’s Mastercard had been used to see if there was any security-camera footage from the times that the card had been used.[1] According to Det. Edge, Lt. Green secured footage from two locations where the card had been used— Ensley Seafood and Cowboy’s service station. Det. Edge testified that one videotape depicted another police officer, Officer Steve Bashears, arriving at Ensley Seafood. Det. Edge spoke with Officer Bashears and read Officer Bashears’s report. Officer Bashears’s report indicated that Melvin Henderson and Orlando Rankin told Officer Bashears that on January 11, 2004, a male in a green Cadillac automobile was trying to sell them gasoline using a credit card. Police identified the vehicle that the person selling gasoline was driving, but could not identify the individual. Several months later, police located the Cadillac automobile and determined that it was owned by Antonio Atkins. According to Det. Edge, Atkins told officers that Spradley used a credit card to purchase gasoline on January 11, 2004.
Matthew Bryant testified that he had been incarcerated in the Jefferson County jail at the same time as Spradley and that Spradley talked to him about murdering a woman in Center Point. Bryant stated that he was in jail on a charge of capital murder in connection with his father’s death and that he faced the death penalty. According to Bryant, Spradley told him that Spradley and Atkins followed the woman from Eastbrook Mall and approached her from behind while she was unloading her vehicle. Spradley choked her and shot her. Bryant stated that Spradley told him that because the woman had no money, Spradley got Atkins to sell gasoline using her credit card. Bryant explained that “[ejvery time that [Sprad-ley] does something like [that], he gets a clover tattooed on him; four-leaf clover.” (R. 298.) Bryant specifically identified a tattoo depicting a clover leaf and a leprechaun as the tattoo Spradley told him he got after he murdered Jason. Spradley had several clover-leaf tattoos on his arms but the photographs showed only one clover-leaf tattoo with a leprechaun.
Atkins, a friend of Spradley, testified that on January 11, 2004, he was at his grandmother’s house when Spradley came by the house to talk to him. Atkins said that he and Spradley went to a Chevron service station near his grandmother’s house and Spradley put gasoline in Atkins’s green Cadillac automobile while Atkins was “under the hood.” (R. 332.) According to Atkins, he knew that Spradley used a credit card to pay for the gasoline for his car because neither of them had any cash; however, he did not know where Spradley got the credit card and he did not see the credit card. Atkins further testified that after they got gasoline, they went to Ensley Seafood and Spradley got into a blue Chevrolet automobile.
Atkins said that he was working a late shift at a McDonald’s fast-food restaurant *778 at the time of the murder. He said that before trial he was approached on the street by an unknown individual and was threatened if he testified against Spradley.
Officer Steve Bashears of the Birmingham Police Department testified that on January 11, 2004, he was dispatched to Ensley Seafood to respond to a complaint from the owner, Viet Van Doe, that someone was stealing gasoline. Officer Bash-ears testified that Van Doe told him that Van Doe thought that Orlando Rankin and Melvin Henderson were stealing gasoline and that Henderson had said that “a person was offering to fill their tanks up with gas for five dollars.”[2] (R. 361.)
Melvin Henderson testified that he was currently in Draper Correctional Facility serving a 22-year sentence for robbery. The prosecutor questioned him concerning purchasing gasoline using a credit card on January 11, 2004, but Henderson refused to answer any questions. Henderson said, “I don’t want to be involved in it” and that he was afraid of both the State and Sprad-ley. (R. 321-22.)
Officer Randy Martinez of the Birmingham Police Department testified that he met Alisha Booker when she filed a complaint against Spradley alleging that he had physically assaulted her. Officer Martinez said that when Booker came to the West Precinct of the Birmingham Police Department on December 21, 2005, she had been beaten, and one of her eyes was bloodshot and swollen. She told him that she and Spradley had had an argument and that he had slapped her, had hit her several times, and had choked her. Officer Martinez read the following from his report: “[Spradley] then stated he was mad because she was talking to a police detective and he [thought] she [was] trying to send him to jail.” (R. 369.) Booker, Spradley’s ex-girlfriend at the time of trial and the mother of three of his children, testified that Spradley confessed to her that he and a friend killed Jason and took her credit card because she had no money in her purse. She said that Spradley told her that they “felt stupid” for killing Jason because they did not get much of anything except credit cards. (R. 406.) Booker further testified that Sprad-ley beat her and said he would kill her because she had talked to a law-enforcement officer about the murder.
The jury convicted Spradley of capital murder and of intimidating a witness. A separate sentencing hearing was held, and the jury recommended, by a vote of 10 to 2, that Spradley be sentenced to life imprisonment without the possibility of parole. The circuit court sentenced Spradley to 20 years on his conviction for intimidating a witness. The circuit court rejected the jury’s recommendation on the capital-murder conviction and sentenced Spradley to death. This appeal followed. See § 13A-5-55, Ala.Code 1975.
Because Spradley has been sentenced to death, according to Rule 45A, Ala. R.App. P., this Court must search the record for “plain error.” Rule 45A states:
“In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
(Emphasis added.)
In Ex parte Brown, 11 So.3d 933 (Ala.2008), the Alabama Supreme Court explained:
*779 “ ‘ “To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s ‘substantial rights,’ but it must also have an unfair prejudicial impact on the jury’s deliberations.” ’ Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002) (quoting Hyde v. State, 778 So.2d 199, 209 (Ala.Crim.App.1998)). In United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the United States Supreme Court, construing the federal plain-error rule, stated:
“ ‘The Rule authorizes the Courts of Appeals to correct only “particularly egregious errors,” United States v. Frady, 456 U.S. 152, 163 (1982), those errors that “seriously affect the fairness, integrity or public reputation of judicial proceedings,” United States v. Atkinson, 297 U.S. [157], at 160 [(1936) ]. In other words, the plain-error exception to the contemporaneous-objection rule is to be “used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.” United States v. Frady, 456 U.S., at 163, n. 14.’
“See also Ex parte Hodges, 856 So.2d 936, 947-48 (Ala.2003) (recognizing that plain error exists only if failure to recognize the error would ‘seriously affect the fairness or integrity of the judicial proceedings,’ and that the plain-error doctrine is to be ‘used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result’ (internal quotation marks omitted)).”
11 So.3d at 938. “The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal.” See Hall v. State, 820 So.2d 113, 121 (Ala.Crim.App.1999). Although Spradley’s failure to object will not bar this Court from reviewing any issue, it will weigh against any claim of prejudice. See Dill v. State, 600 So.2d 343, 352 (Ala.Crim.App.1991).
I.
Spradley argues that the circuit court erred in admitting two State exhibits, a DVD and a CD, without requiring the State to establish a proper foundation for their admittance. This Court agrees.
Specifically, Spradley challenges the admission of State’s exhibits 49 and 50 — video recordings from two service stations — because the State failed to lay a proper foundation. State’s exhibit 49 is a DVD copy of surveillance footage from Ensley Seafood that was made two days after the murder. State’s exhibit 50 is a CD that consists of nine still photographs purportedly copied from surveillance footage from Cowboy’s that was made the same day. The copies were offered and admitted during Det. Edge’s testimony. The following occurred:
“[Prosecutor]: [Det.] Edge, I’m going to show you what’s been marked as State’s Exhibit 49. Do you recognize that particular video, that particular disk?
“[Det. Edge]: I recognize it as one of them.
“[Prosecutor]: Okay. And is this, in fact, the video that was collected from the Ensley Seafood, over on the 6800 block of First Avenue North?
“[Det. Edge]: I’m not sure of the exact address, but it’s First Avenue North, yes.
“[Prosecutor]: But it is Ensley Seafood? “[Det. Edge]: Yes, sir.
“[Prosecutor]: And have you had a chance to view this particular video?
“[Det. Edge]: Yes, I have.
*780 “[Prosecutor]: All right. All right. And is that the video that you used during the course of your investigation, in order to try to identify anyone or anything that was involved in the death of Marlene Jason?
“[Det. Edge]: Yes, sir.
“[Prosecutor]: All right.
“[Prosecutor]: State would move to introduce State’s Exhibit 49.
“[Defense counsel]: Your Honor, we would object at this time, because the proper predicate has not been laid, in that the chain of evidence has not been established concerning this tape. “The Court: All right. What’s your response, [prosecutor]?
“[Prosecutor]: Well, Judge, I think if this is the information that the [Det. Edge] used during the course of his investigation, to try to develop information, I think he would be able to testify that this is, in fact, the information he used. If he’s got a video, and he used that particular video, again, during the course of his investigation, he would certainly be able to testify that that is, in fact, the one he used.
“The Court: Okay. Overruled, it’s admitted.”
(R. 470-71.)
During the discussion concerning State’s Exhibit number 50, the following occurred:
“[Prosecutor]: All right. I will show you what’s been marked as State’s Exhibit 50. Take a look at that, please. Do you recognize State’s Exhibit 50?
“[Det. Edge]: Yes, sir.
“[Prosecutor]: WTiat is that?
“[Det. Edge]: That’s a copy of the Cowboy’s CD.
“[Prosecutor]: Okay, and that’s the video that you relied on during the course of your investigation?
“[Det. Edge]: Yes, sir, the video.
“[Prosecutor]: Okay. And did you make — were you able to make any determinations — or identify any individuals on that particular CD?
“[Det. Edge]: There was one individual that looks extremely close to Montez Spradley, on the inside.
“[Prosecutor]: Okay.
“[Det. Edge]: But other — as far as the outside, charging, no.
“[Prosecutor]: Okay. All right.
“[Prosecutor]: State would move to introduce State’s Exhibit 50.
“[Defense counsel]: We would object, Your Honor, on the same objections—
“The Court: Overruled.”
(R. 475-76.)
Initially, this Court notes that “an objection that a proper foundation or predicate has not been made is specific enough to put the trial court on notice that counsel is challenging the prosecutor’s procedure for presenting the evidence.” Wyatt v. State, 620 So.2d 77, 79 (Ala.Crim.App.1992). Accordingly, Spradley preserved this issue for this Court’s review.
Further, this Court has explained that “ ‘[t]he proper foundation required for the admission of a sound recording [or a video recording] into evidence depends on the circumstances of the case in which the admission is sought.’ ” Mitchell v. State, 84 So.3d 968, 993 (Ala.Crim.App.2010) (quoting Smith v. State, 727 So.2d 147, 167 (Ala.Crim.App.1998)). Wdien discussing these requirements, the Alabama Supreme Court has stated:
“There are two theories upon which photographs, motion pictures, videotapes, sound recordings, and the like are analyzed for admission into evidence: the ‘pictorial communication’ or ‘pictorial testimony’ theory and the ‘silent witness’ *781 theory. Wigmore [on Evidence ], supra, § 790 [ (1970 & Supp.1991) ]; [2] McCormick [on Evidence ], supra, § 214 [ (1992) ]; and Schroeder, [Alabama Evidence,] supra § 11-3 [(1987 & Supp. 1988) ]. The ‘pictorial communication’ theory is that a photograph, etc., is merely a graphic portrayal or static expression of what a qualified and competent witness sensed at the time in question. Wigmore, supra, § 790, and McCormick, supra, § 214. The ‘silent witness’ theory is that a photograph, etc., is admissible, even in the absence of an observing or sensing witness, because the process or mechanism by which the photograph, etc., is made ensures reliability and trustworthiness. In essence, the process or mechanism substitutes for the witness’s senses, and because the process or mechanism is explained before the photograph, etc., is admitted, the trust placed in its truthfulness comes from the proposition that, had a witness been there, the witness would have sensed what the photograph, etc., records. Wigmore, supra, § 790, and McCormick, supra, § 214.
“A reasonable reading of Voudrie [v. State, 387 So.2d 248 (Ala.Crim.App.1980) ], Carraway [u. State ], [583 So.2d 993 (Ala.Crim.App.1991) ] Molina [v. State], [533 So.2d 701 (Ala.Crim.App.1988) ] and the more recent caselaw of the Court of Criminal Appeals leads us to conclude that the Court of Criminal Appeals is of the opinion that the ‘pictorial communication’ and ‘silent witness’ theories are mutually exclusive theories, rather than alternative theories. The proper foundation required for admission into evidence of a sound recording or other medium by which a scene or event is recorded (e.g., a photograph, motion picture, videotape, etc.) depends upon the particular circumstances. If there is no qualified and competent witness who can testify that the sound recording or other medium accurately and reliably represents what he or she sensed at the time in question, then the ‘silent witness’ foundation must be laid. Under the ‘silent witness’ theory, a witness must explain how the process or mechanism that created the item works and how the process or mechanism ensures reliability. When the ‘silent witness’ theory is used, the party seeking to have the sound recording or other medium admitted into evidence must meet the seven-prong Voudrie test. Rewritten to have more general application, the Voudrie standard requires:
“(1) a showing that the device or process or mechanism that produced the item being offered as evidence was capable of recording what a witness would have seen or heard had a witness been present at the scene or event recorded, “(2) a showing that the operator of the device or process or mechanism was competent,
“(3) establishment of the authenticity and correctness of the resulting recording, photograph, videotape, etc.,
“(4) a showing that no changes, additions, or deletions have been made,
“(5) a showing of the manner in which the recording, photograph, videotape, etc., was preserved,
“(6) identification of the speakers, or persons pictured, and
“(7) for criminal cases only, a showing that any statement made in the recording, tape, etc., was voluntarily made without any kind of coercion or improper inducement.[3]
*782 “On the other hand, when a qualified and competent witness can testify that the sound recording or other medium accurately and reliably represents what the witness sensed at the time in question, then the foundation required is that for the ‘pictorial communication’ theory. Under this theory, the party offering the item must present sufficient evidence to meet the ‘reliable representation’ standard, that is, the witness must testify that the witness has sufficient personal knowledge of the scene or events pictured or the sounds recorded and that the item offered accurately and reliably represents the actual scene or sounds.”
Ex parte Fuller, 620 So.2d 675, 678 (Ala.1993).
Surveillance videotapes may be admissible under the pictorial-communication theory or the silent-witness theory. See Ivery v. State, 686 So.2d 495 (Ala.Crim.App.1996). Here, “[sjince none of the officers were present at the site while the cameras recorded [the defendant’s] activities [and no other witness testified that the videos accurately reflected what they saw] ..., the ‘silent-witness’ theory is appropriate.” Straughn v. State, 876 So.2d 492, 502 (Ala.Crim.App.2003). See also Ex parte Rieber, 663 So.2d 999 (Ala.1995).
In Pressley v. State, 770 So.2d 115 (Ala.Crim.App.1999), this Court applied the requirements necessary for introducing a video under the silent-witness theory:
“[The police officer] then identified the exhibit as the videotape he had removed from the surveillance VCR at the pawnshop, testified that it was kept in his sole custody, except for a day when it was released to the FBI, and testified that it was in the same condition at trial, and that there had been no changes on the videotape, as when he first viewed the videotape. It was after this testimony that the trial court admitted the surveillance videotape into evidence.
“By calling a witness with expertise in surveillance camera systems, the State properly established that the pawnshop’s surveillance system was in proper working order and capable of recording accurately what was happening in the area of the pawnshop it was focused on. [The police officer’s] testimony indicated that the videotape recording was correct and authentic. Therefore, the State properly satisfied the elements of the Voudrie test as articulated by the Alabama Supreme Court in Ex parte Rie-ber, supra.”
770 So.2d at 132-33. See also Washington v. State, 406 Md. 642, 653, 961 A.2d 1110, 1116 (2008) (“Courts have admitted surveillance tapes and photographs made by surveillance equipment that operates automatically when ‘a witness testifies to the type of equipment or camera used, its general reliability, the quality of the recorded product, the process by which it was focused, or the general reliability of the entire system.’ ”); Logue v. State, 529 So.2d 1064, 1068 (Ala.Crim.App.1988) (“The purpose of laying a proper foundation for the admission of a tape recording is to show that the [depiction on the tape] was accurately recorded and preserved.”)
Here, the State failed to present any testimony to satisfy the silent-witness theory. The record is totally devoid of any of the requirements discussed in Ex parte Fuller, 620 So.2d at 678. The only question asked of Det. Edge was whether he used those recordings during the course of his investigation to develop a suspect. The fact that a law-enforcement officer viewed recordings during his investigation is not sufficient to establish a proper foundation for the admittance of the recording under either the pictorial-communication theory or the silent-witness theory. *783 Therefore, the two recordings were improperly admitted at trial because the State failed to lay the proper foundation for their admission.
Further, this Court cannot say that the improper admission of the recordings was harmless. Rule 45, Ala. R.Crim. P. Rule 45, Ala. R.App. P., states:
“No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
At the time that State’s exhibit number 49 was offered and admitted into evidence, Det. Edge testified that the tape showed a green Cadillac automobile next to a blue Chevrolet automobile at the gasoline pump where Jason’s credit card had been used. The Cadillac automobile was identified as belonging to Atkins. Det. Edge testified that State’s exhibit 50 consisted of still photographs purportedly taken from a surveillance camera at Cowboy’s at the time that Jason’s credit card had been used at that location. Det. Edge said that the individual in several of the photographs made at Cowboy’s at the time the victim’s credit card had been used at that location strongly resembled the defendant. The recordings were the only demonstrative evidence linking Spradley to the use of Jason’s credit card. Moreover, the State’s evidence against Spradley, aside from Det. Edge’s testimony regarding his investigation, was neither ironclad nor overwhelming. See Ex parte Greathouse, 624 So.2d 208, 211 (Ala.1993) (recognizing that prejudicial error could be harmless, when the evidence of the defendant’s guilt is “virtually ironclad”). Finally, as discussed in detail below, multiple errors occurred in Spradley’s trial. Based on the strength of the State’s evidence and the cumulative errors that occurred in this case, this Court cannot say that the erroneous admission of the video recordings was harmless.[4]
II.
Spradley next argues that the State improperly introduced prejudicial hearsay testimony during the direct examination of two police officers who investigated Jason’s death. See Rule 802, Ala. R. Evid. Specifically, Spradley contends that the State improperly elicited testimony from Officer Steve Bashears and Det. Don Edge establishing that Melvin Henderson told them that an individual at Ensley Seafood offered to use a credit card to fill his tank with gasoline in exchange for $5 in cash. Spradley also argues that the State improperly introduced hearsay testimony from Det. Edge indicating that Jason’s credit card had been used after her death at Roger Jolly Chevron and several days after her death at various locations around town. Det. Edge learned of the times and locations Jason’s card had been used through documents supplied by her credit-card company, but the State did not admit those documents into evidence. Spradley further argues that because Det. Edge’s testimony regarding the use of Jason’s credit cards was based on documents from the credit-card company, Det. Edge lacked *784 any personal knowledge of the information in those documents and his testimony constituted improper hearsay. See Rules 602 and 802, Ala. R. Evid. Spradley did not object to Officer Bashears’s and Det. Edge’s testimony, but asserts that this Court should reverse his conviction despite his failure to preserve these issues for review because the erroneous admission of Officer Bashears’s and Det. Edge’s testimony rises to the level of plain error. Rule 45A, Ala. R.App. P. This Court agrees.
At trial, the State’s theory was that Spradley murdered Jason during a robbery, took her credit card, and used the card to purchase gasoline for people in exchange for cash. To prove its theory that Jason’s credit card had been used after her murder, the State offered Det. Edge’s testimony that he had learned through documents provided by the company that issued Jason’s credit card that the card had been “used one time Friday night, ... they call[ ] it Roger Jolly Chevron[,] and Sunday, following ... Jason’s death ... [at the Cowboy’s service station] .... ” (R. 439; 475.) To show that Spradley used Jason’s credit card at Cowboy’s service station, the State admitted exhibit 50, a CD consisting of nine still photographs that appeared to depict Spradley inside Cowboy’s on the day Jason’s credit card was used at that location.
To further establish its theory, the State elicited testimony from Det. Edge indicating that based on the information he received from the company that issued the credit card, Jason’s credit card was also used “Sunday, following ... Jason’s death ... [at] Ensley Seafood.... ” (R. 439; 475.) In an attempt to show that Spradley used Jason’s card at Ensley Seafood, the State presented testimony from Antonio Atkins indicating that Atkins and Spradley went to Ensley Seafood on January 11, 2004, Spradley paid for gasoline for Atkins’s car with a credit card, and Spradley spoke with someone in a blue Chevrolet automobile. The State also admitted exhibit 49, a video recording.[5]
To establish that Spradley attempted to use Jason’s credit card at Ensley Seafood to obtain cash, the State called Melvin Henderson, the owner of the blue Chevrolet automobile, to testify. Henderson, however, refused to testify against Sprad-ley. To fill the void left by Henderson’s refusal to testify, the State elicited testimony from Officer Bashears and Det. Edge that Henderson made a statement to them indicating that someone at Ensley Seafood offered to use a credit card to fill the gas tank of his car with gasoline in exchange for cash. This testimony was used in conjunction with Atkins’s testimony and the State’s improperly admitted exhibit 50.
It is well settled that “[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.” Rule 602, Ala. R.Crim. P. See also Ex parte Brown, 74 So.3d 1039, 1048 (Ala.2011) (reaffirming the requirement that a witness have personal knowledge of the events to which that witness testifies). Similarly, Rule 802, Ala. R. Evid., provides that “[h]earsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute.” “Hearsay” is defined as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801, Ala. R. Evid.
*785 “It is clear that the hearsay rule applies only to a statement offered for the truth of its contents.” Edwards v. State, 502 So.2d 846, 848-49 (Ala.Crim.App.1986) (citations omitted). In Sawyer v. State, 598 So.2d 1035 (Ala.Crim.App.1992), this Court explained:
“ ‘A statement may be admissible where it is not offered to prove the truth of whatever facts might be stated, “but rather to establish the reason for action or conduct by the witness [when the reason for the action or conduct is relevant to an issue at trial].” ’ Edwards v. State, 502 So.2d 846, 849 (Ala.Cr.App.1986) (quoting Tucker v. State, 474 So.2d 131, 132 (Ala.Cr.App.1984), rev’d on other grounds, 474 So.2d 134 (1985)). The officers related information obtained from other sources to explain why they proceeded as they did. This was not hearsay. See, e.g., Brannon [v. State ], 549 So.2d [532] at 539 [(Ala.Crim.App.1989) ]; McCray v. State, 548 So.2d 573, 576 (Ala.Cr.App.1988). See, also, Molina v. State, 533 So.2d 701, 714 (Ala.Cr.App.1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989); Tillis v. State, 469 So.2d 1367, 1370 (Ala.Cr.App.1985).”
598 So.2d at 1038. See also Miller v. State, 687 So.2d 1281, 1285 (Ala.Crim.App.1996) (“The officers’ testimony in this case was received to show the reasons for the officers’ actions and how their investigation focused on a suspect.”). Recognizing the potential for abuse and the dangers of allowing out-of-court statements to be admitted for any purpose other than to prove the truth of the matter asserted, the Alabama Supreme Court has cautioned:
“We urge vigilance in evaluating any offer of testimony about an out-of-court declaration ‘not for the truth of the matter asserted.’ The admissibility of such testimony depends on its being relevant to a proper issue in the case. The first inquiry should be: ‘if the out-of-court declaration is not offered for its truth, is whatever the declaration does tend to prove really at issue in the particular proceedings?’ ”
Ex parte Melson, 775 So.2d 904, 907 n. 2. (Ala.2000). See also Ex parte Toney, 854 So.2d 37, 40-41 (Ala.2002) (“For what purpose was Bill’s testimony that the agents of the Tennessee car dealership identified Toney from a photograph offered in evidence? We can discern no purpose other than proving that Toney had in fact been in Tennessee. That testimony had absolutely no other relevance to the proceeding. Further, if we assume for the sake of argument that its purpose was not to prove that Toney had been in Tennessee, then that proof would not otherwise have been available in the evidence.”); United States v. Silva, 380 F.3d 1018, 1020 (7th Cir.2004) (“Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant’s rights under the sixth amendment and the hearsay rule.”); Conley v. State, 620 So.2d 180, 182 (Fla.1993) (“[T]he inherently prejudicial effect of admitting into evidence an out-of-court statement relating accusatory information only to establish the logical sequence of events outweighs the probative value of such evidence. Such practice must be avoided.”). Indeed,
“[i]t will be seen that only in rare instances will the ‘conduct’ of an investigating officer need to be ‘explained’, as in practically every case, the motive, intent, or state of mind of such an officer will not be ‘matters concerning which the truth must be found.’ At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly *786 concern itself with why an investigating officer did something.”
Teague v. State, 252 Ga. 534, 536, 314 5.E.2d 910, 912 (1984).
In this case, Det. Edge’s testimony relating to the times when and locations where Jason’s credit card was used after her murder was not based on his personal, firsthand knowledge. See Rule 602, Ala. R. Evid.; Ex parte Brown, 74 So.3d at 1047 (reaffirming the requirement that a witness have personal knowledge of the events to which that witness testifies). Instead, Det. Edge testified to statements provided to him by Jason’s credit-card company. See Rule 801, Ala. R. Evid. Further, Det. Edge’s testimony was neither relevant to show nor offered to prove anything other than the truth of the matter asserted, i.e., that Jason’s credit cards were used after her murder at specific times and specific places. See Ex parte Melson, 775 So.2d at 907 n. 2. Because Det. Edge’s testimony was based on statements provided to him by Jason’s credit-card company, his testimony should have been excluded pursuant to Rules 602 and 802, Ala. R. Evid., because he lacked personal knowledge of the information and the testimony was hearsay.[6]
Likewise, Officer Bashears’s and Det. Edge’s testimony regarding Henderson’s statements to them was not relevant to prove any relevant matter except the truth of the matter asserted. In fact, Officer Bashears’s and Det. Edge’s testimony regarding Henderson’s out-of-court statement appears to have been admitted to fill the void in the State’s case left by Henderson’s refusal to testify. Accordingly, the testimony relating to Henderson’s out-of-court statement was hearsay and was improperly admitted pursuant to Rule 802, Ala. R. Evid.
Furthermore, the erroneous admission of Det. Edge’s and Officer Bashears’s testimony was “particularly egregious,” “adversely affected [Spradley’s] substantial right[s],” “seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings,” Ex parte Brown, 74 So.3d at 1043 (citations and quotations omitted), and resulted in “a miscarriage of justice.... ” Waldrop v. State, 59 So.3d 60, 61 (Ala.Crim.App.2010) (citations and quotations omitted). The State used Det. Edge’s testimony regarding when and where Jason’s credit cards had been used in conjunction with the State’s exhibit 50—• nine photographs depicting Spradley inside Cowboy’s on January 11, 2004, the day Jason’s credit card was used at that location—to prove that Spradley had used Jason’s credit card. Further, the State used Det. Edge’s testimony regarding when and where Jason’s credit cards had been used and Henderson’s out-of-court statements in conjunction with State’s exhibit 49—a video from Ensley Seafood— and Atkins’s testimony to establish that Spradley had Jason’s credit card, that he used it at Ensley Seafood, and that he sought to use it to purchase gasoline for people in exchange for cash.
Without Det. Edge’s testimony relating to when and where Jason’s credit card had been used, the testimony establishing that Spradley used a credit card at Ensley Seafood and the photographs of Spradley inside Cowboy’s service station were meaningless. Similarly, without Det. Edge’s testimony relating to when and where Jason’s credit card had been used and Henderson’s out-of-court statement, Atkins’s testimony that Spradley used a *787 credit card at Ensley Seafood was meaningless. The times and places where Jason’s credit card had been used coupled with Henderson’s out-of-court statement and State’s exhibits 49 and 50 constituted the bulk of the State’s evidence establishing Spradle/s guilt.
As the foregoing establishes, the improper admission of Officer Bashears’s and Det. Edge’s testimony must have had “an unfair prejudicial impact on the jury’s deliberations.” Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002) (citations and quotations omitted). When coupled with the improperly admitted recordings from Cowboy’s service station and Ensley Seafood, Officer Bashears’s and Det. Edge’s inadmissible testimony certainly affected the jury’s decision. Therefore, this Court holds that the erroneous admission of Officer Bashears’s and Det. Edge’s testimony was plain error and entitles Spradley to relief. Rule 45A, Ala. R.App. P.
III.
Spradley next argues that the prosecutor committed plain error in introducing evidence of a third-party threat to a State’s witness. Specifically, Spradley challenges the following testimony that was admitted during Atkins’s direct examination:
“[Prosecutor]: Have you had any types of threats against you or your family about coming here to testify today?
“[Atkins]: Yeah.
“[Prosecutor]: And what form have those threats been in?
“[Atkins]: I was told not to come testify.
“[Prosecutor]: And you were told that by who?
“[Atkins]: Against Montez.
“[Prosecutor]: I’m sorry.
“[Atkins]: I was told not to come testify against Montez.
“[Prosecutor]: And who told you not to come testify?
“[Atkins]: Some — I don’t know if they were family members or not, but I was approached by someone on the street, telling me not to.
[[Image here]]
“[Prosecutor]: Okay. I’m going to back up a little bit. I think I got ahead of myself. You stated that you received threats. Okay. Where did those threats come from? Who?
“[Atkins]: I don’t know his name, but I know his face.
“[Prosecutor]: Where were you when you received those threats?
“[Atkins]: East Lake.
“[Prosecutor]: Okay. And did this person come up to you personally?
“[Atkins]: Yeah.
“[Prosecutor]: And what specifically did he say to you?
“[Defense counsel]: I’m going to object to hearsay, Your Honor.
“The Court: Okay. Overruled.
“[Atkins]: I was told not to come to court and testify against Montez in the murder case.”
(R. 335-38.)
According to Spradley, the State committed error by eliciting testimony from Atkins indicating that a third party had threatened Atkins in an attempt to prevent Atkins from testifying against Spradley because the State failed to link Spradley to the threat. At trial, Spradley made only a hearsay objection; therefore, this Court reviews this issue for plain error only. Davis v. State, 42 So.3d 162, 168 (Ala. Crim.App.2009) (“The statement of specific grounds of objection waives all grounds not specified.... ”). See Rule 45A, Ala. R.App. P.
*788 Alabama has long held that threats made to a witness by a third party are not admissible unless the defendant is connected to the making of the threat. See Sims v. State, 146 Ala. 109, 118, 41 So. 413, 415 (1906) (holding that the State improperly admitted testimony that the defendant’s father attempted to suppress a witness’s statement because no evidence was presented indicating “that this was done by the procurement of the defendant, or with his knowledge or consent”). In Arthur v. State, 575 So.2d 1165, 1177-80 (Ala.Crim.App.1990), this Court explained:
“ ‘A threat by a third person against a ... witness is relevant only if the defendant is linked in some way to the making of the threat. Thus, evidence that a witness received an unsigned letter containing a threat should be excluded if there is no evidence to connect the defendant with it.’
“C. Torcía, 1 Wharton’s Criminal Evidence § 157 (14th ed. 1985) (footnote omitted). ‘Evidence of an attempt by a non-witness third person to suppress testimony is admissible if, but only if, it is shown that the party against whom such evidence is offered, procured, promoted or approved such attempt.’ C. Gamble, McElroy’s Alabama Evidence § 190.03 (3d ed.1977) (footnote omitted). See also Sims v. State, 146 Ala. 109, 41 So. 413 (1906); Stewart v. State, 398 So.2d 369 (Ala.Cr.App.), cert. denied, 398 So.2d 376 (Ala.1981). The prosecutor made absolutely no attempt to link, to Arthur, the threat made to Wicker. In fact, at trial, the prosecutor claimed that Brantley’s testimony had nothing to do with Arthur directly.”
Further, Professor Gamble and Professor Goodwin write:
“Evidence of an attempt by a nonwitness third person to suppress evidence is admissible if, but only if, it is shown that the party against whom such evidence is offered either procured, promoted or approved such attempt. This evidence is, like in the previous section, admissible under the theory that it constitutes an implied admission by the party who procured, promoted or approved the attempt to suppress.”
Charles W. Gamble and Robert J. Goodwin, McElroy’s Alabama Evidence, § 190.03 (6th ed.2009). See Annot., Admissibility in Criminal Case, on Issue of Defendant’s Guilt, of Evidence that Third Person has Attempted to Influence a Witness not to Testify or to Testify Falsely, 79 A.L.R.3d 1156 (1977). See also Stewart v. State, 398 So.2d 369, 375 (Ala.Crim.App.1981) (recognizing that “when the execution of a threat or the attempt to suppress evidence is done by a third party, then it must be shown that the defendant offered, procured, promoted or approved such attempt”) (citations and quotations omitted). See also Cox v. State, 422 N.E.2d 357, 361—62 (Ind.Ct.App.1981) (mere mention of the defendant’s name during a threat is not sufficient to establish a nexus to the defendant); Sims, 146 Ala. at 118, 41 So. at 415 (evidence of a family relationship between the defendant and the person making the threat is not enough to establish a sufficient nexus to the defendant).
Here, the State failed to establish any connection between the threat and Sprad-ley. Atkins did not know the name of the person who threatened him, and nothing indicated that Spradley “procured, promoted or approved” the threat. Arthur, 575 So.2d at 1177. Accordingly, the fact that Atkins had been threatened by a third party was irrelevant and inadmissible.
Further, in this unique case, the improper admission of the third-party threat seriously affected Spradle/s “substantial rights,” probably had “an unfair prejudicial impact on the jury’s delibera *789 tions,” and resulted in “a miscarriage of justice”; therefore, it constituted plain error. Albarran v. State, 96 So.3d 131, 147 (Ala.Crim.App.2011). As discussed above, the bulk of the State’s evidence against Spradley was improperly admitted. Additionally, with no evidence indicating that Spradley procured the threat, Atkins’s testimony was prejudicial and “inject[ed] [into the trial] ... innuendo that ... [Spradley] was behind the threats to [Atkins].” Arthur, 575 So.2d at 1177-78. This innuendo most likely left the jury with the understanding that Spradley was a dangerous person of bad character, who could authorize a threat from jail. This testimony would also have indicated that Spradley must be guilty, otherwise he would not have attempted to prevent Atkins from testifying. Accordingly, this issue entitles Spradley to relief.
IV.
Spradley next argues that the State improperly introduced evidence of prior bad acts for no purpose other than to show his bad character in violation of Rule 404, Ala. R. Evid. Specifically, Spradley argues that the State erroneously elicited testimony from Matthew Bryant, Sprad-ley’s fellow prisoner, indicating that Sprad-ley was on probation and had been in jail for violating the terms of his probation. Spradley did not object to Bryant’s testimony; therefore, this Court reviews this issue for plain error only. Rule 45A, Ala. R.Crim. P.
At trial, the following occurred during the State’s direct examination of Bryant:
“[Prosecutor]: Mr. Bryant, do you remember the first time that you had a conversation with Montez Spradley concerning the death of a lady in Center Point?
“[Bryant]: Yes, sir.
“[Prosecutor]: Do you remember when that conversation took place?
“[Bryant]: It happened the second time he came into the jail, sir. And—
“[Prosecutor]: All right. What about the first time that he came into the jail, did—
“[Bryant]: I just talked to him a few times. I fed everybody, I did the trays and stuff on the floor, and — you know, you run into people, and people need things, and you help them out.
[[Image here]]
“[Prosecutor]: Okay. And the second time you saw Montez Spradley, was that in the Jefferson County Jail, as well?
“[Bryant]: Yes, sir.
“[Prosecutor]: Tell us how you and he got to be conversational with each other, please.
“[Bryant]: He got in trouble in one of the other blocks, and they were all getting ready to jump on him, so I talked to one of the other officers and got him moved over in the block with us. I was just doing it because it was the right thing to do. I didn’t know anything about him. And so after that we — you know, we just started talking, you know, he come to my cell. It stayed open all the time because I was a floor worker. So, we would go in there and sit around and talk, while everybody else was being loud and watching TV and stuff, sir.
[[Image here]]
“[Prosecutor]: All right. You mentioned two girlfriends, now—
“[Bryant]: yes, sir.
“[Prosecutor]: — and you are using the term ‘she.’
“[Bryant]: Yes, sir.
“[Prosecutor]: So, I need you to specify who you are talking about, please.
*790 “[Bryant]: Okay. The girl that has the baby—
“[Prosecutor]: Okay.
“[Bryant]: — and was pregnant with another baby of his, she was the one that talked to the police and had him rearrested on this case.
“[Prosecutor]: Okay. All right. And was he in jail on that case?
“[Bryant]: No, sir, he was there on a probation violation."
(R. 291-94 (emphasis added).)
Rule 404(a), Ala. R. Evid., provides that “[e]vidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith.... ” Similarly, Rule 404(b), Ala. R. Evid., states:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....”
This Court has explained that “ ‘Rule 404(b) is a principle of limited admissibility. This means that the offered evidence is inadmissible for one broad, impermissible purpose, but is admissible for one or more other limited purposes....”’ Taylor v. State, 808 So.2d 1148, 1165 (Ala.Crim.App.2000) (quoting C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996) (emphasis added)).
“The Alabama Supreme Court has ‘held that the exclusionary rule prevents the State from using evidence of a defendant’s prior bad acts to prove the defendant’s bad character and, thereby, protects the defendant’s right to a fair trial.’ Ex parte Drinkard, 777 So.2d 295, 302 (Ala.2000) (citing Ex parte Cofer, 440 So.2d 1121, 1123 (Ala.1983)). This court has explained that ‘[o]n the trial for the alleged commission of a particular crime, evidence of the accused’s having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused’s conformity therewith.’ Lewis v. State, 889 So.2d 623, 661 (Ala.Crim.App.2003) (quoting C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996)).
“ ‘ “ ‘This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused’s bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.’ ” ’
“Ex parte Jackson, 33 So.3d 1279, 1284-1285 (Ala.2009) (quoting Ex parte Arthur, 472 So.2d 665, 668 (Ala.1985), quoting in turn McElroy’s supra, § 69.01(1)).
“The State is not prohibited from ever presenting evidence of a defendant’s pri- or bad acts. This court has stated:
“‘If the defendant’s commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing of bad character, then proof of such other act is admissible. [Some] well-established exceptions to the exclusionary rule include: (1) relevancy to prove identity; (2) relevancy to prove res gestae; (3) relevancy to prove scienter; (4) relevancy to prove intent; (5) relevancy to show motive; (6) relevancy to prove system; (7) relevancy to prove malice; (8) relevancy *791 to rebut special defenses; and (9) relevancy in various particular crimes.’
“Harris v. State, 2 So.3d 880, 907 (Ala. Crim.App.2007) (internal citations and quotations omitted). However, ‘[f]or collateral-act evidence to be admissible for one of the “other purposes” in Rule 404(b), there must be “ ‘a real and open issue as to one or more of those “other purposes.” ’ ” ’ Draper v. State, 886 So.2d 105, 117 (Ala.Crim.App.2002) (quoting Gillespie v. State, 549 So.2d 640, 645 (Ala.Crim.App.1989), quoting in turn Bowden v. State, 538 So.2d 1226, 1227 (Ala.1988)).”
Moore v. State, 49 So.3d 228, 232-33 (Ala.Crim.App.2009).
Further, the Alabama Supreme Court has held that evidence that a defendant has been arrested in the past constitutes bad-character evidence. Ex parte Johnson, 507 So.2d 1351, 1357 (Ala.1986). In Ex parte Johnson, 507 So.2d at 1357, the Alabama Supreme Court held that it was plain error to admit a fingerprint card that contained the details of Johnson’s prior arrests on the back of the card when the card had no relevance except to show the accused’s bad character. The Court stated:
“In the present case, the copy showing the front of [the fingerprint card] contained information which clearly revealed the defendant’s past contacts with law enforcement agencies. From this the jury could have readily inferred, at a minimum, that he had been arrested in the past. In our view, such an inference would have had an almost irreversible impact upon the minds of the jurors.”
507 So.2d at 1357. Likewise, in Tabb v. State, 553 So.2d 628, 630 (Ala.Crim.App.1988), this Court found that plain error occurred when the State elicited testimony indicating that the defendant was a “drug addict.” This Court noted that there was “no purpose in the elicitation of this testimony, other than to show the bad character of the appellant.” Id. This Court further found that the testimony was prejudicial because it undermined the defense’s credibility. Id. at 631. Further, in United States v. Calhoun, 544 F.2d 291, 296 (6th Cir.1976), the United States Court of Appeals for the Sixth Circuit explained:
“Parole suggests to the jury that the crime was recent and that it was one which required imprisonment. The knowledge that [the defendant] was on parole at the time of the alleged offense could also arouse an emotional reaction among the jurors, especially those who harbor strong feelings about recidivism and the premature release of those in prison for crimes. Thus in United States v. Poston, 430 F.2d 706 (6th Cir.1970), we held that it was prejudicial and reversible error to have introduced evidence before a jury that the defendant was on probation at the time of the alleged offense. See, also, United States v. Smith, 403 F.2d 74 (6th Cir.1968); United States v. Rudolph, 403 F.2d 805 (6th Cir.1968); United States v. Calvert, 498 F.2d 409 (6th Cir.1974); United States v. Hurst, 510 F.2d 1035 (6th Cir.1975); United States v. Blanton, 520 F.2d 907 (6th Cir.1975).”
Here, the State specifically elicited testimony from Bryant establishing that Spradley was in jail for a probation violation when he spoke with Spradley about Jason’s murder. Bryant’s testimony relating to Spradley’s probation violation constituted evidence of Spradley’s bad character and established that Spradley had committed prior bad acts. Calhoun, 544 F.2d at 296. Further, there was “no purpose [for eliciting that] testimony, other than to show [Spradley’s] bad character....” Tabb, 553 So.2d at 630. *792 Bryant’s testimony that Spradley was in jail for violating his probation alerted the jury to the fact that Spradley had a prior conviction and that he had committed another bad act. Consequently, Bryant’s testimony was inadmissible pursuant to Rule 404, Ala. R. Evid., and should have been excluded.
Further, in this unique case, the admission of Bryant’s testimony constituted plain error. Rule 45A, Ala. R. Evid. As discussed above, the bulk of the State’s case consisted of evidence for which the State failed to lay a proper foundation or that was inadmissible hearsay. Accordingly, the State did not present overwhelming evidence of guilt. Further, when Bryant’s testimony relating to Spradley’s probation violation is considered in conjunction with Atkins’s testimony that someone threatened to harm him if he testified against Spradley, the jury surely must have been left with the impression that Spradley was a dangerous, career criminal. Such an impression would have had an “almost irreversible impact upon the minds of the jurors.” Ex parte Johnson, 507 So.2d at 1357. Consequently, the admission of Bryant’s testimony relating to Spradley being in jail for a probation violation must have had “an unfair prejudicial impact on the jury’s deliberations,” Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002) (citations and quotations omitted), and “adversely affected [Spradley’s] substantial right[s],” Ex parte Brown, 74 So.3d 1039, 1043 (Ala.2011); therefore, it constitutes plain error. Rule 45A, Ala. R.Crim. P.
V.
When reviewing Spradley’s capital-murder conviction, this Court uses the plain-error standard of review. Rule 45A, Ala. R.App. P. However, this standard does not apply to review of Spradley’s conviction for intimidating a witness. As the Alabama Supreme Court stated in Ex parte Woodall, 730 So.2d 652 (Ala.1998):
“Because the defendant in this case was sentenced to death, we have complied with our obligation [to conduct] a plain-error review. However, with respect to his attempted murder conviction, for which he received a sentence of less than death, we do not believe the defendant is entitled to benefit from our plain error review. We have found no Alabama decision dealing with the particular situation present here: a case in which plain error necessitated a reversal on a capital conviction and death sentence but in which the defendant was also sentenced to a term of imprisonment on another conviction. However, the defendant’s sentence of imprisonment for his conviction of attempted murder does not implicate the same heightened degree of concern for reliability that attended his sentence of death for the capital conviction. It is well established that where a defendant receives only a prison sentence the plain-error doctrine is not applicable and an appellate court will not consider an alleged error that the defendant failed to preserve by making a proper and timely objection in the trial court. See Biddie v. State, 516 So.2d 846 (Ala.1987); Harris v. State, 347 So.2d 1363 (Ala.Cr.App.1977), cert. denied, 347 So.2d 1368 (Ala.197[7]). Indeed, it has been said that the plain-error doctrine ‘applies to death penalty cases, but not to other convictions’ Pugh v. State, 355 So.2d 386, 389 (Ala.Cr.App.), cert. denied, 355 So.2d 392 (Ala.1977) (citations omitted) (emphasis added).
“Had the defendant been convicted and sentenced to a term of imprisonment on the attempted murder count but either acquitted or sentenced to life imprisonment without the possibility of *793 parole on the capital murder count, the plain-error doctrine would not have applied. Thus, we would not have even considered the error upon which we have predicated our reversal of his capital conviction and death sentence: the State’s questioning of the defendant regarding his character and the subsequent introduction of evidence of specific incidents tending to indicate a propensity for violence. No objection to that questioning was raised at trial. The defendant should not be put in a more favorable position with respect to our review of his noncapital conviction simply because he was also found guilty of a capital offense and was sentenced to death. Thus, we conclude that the defendant’s failure to object to the State’s inquiry into his character or to the introduction of evidence of the three violent incidents precludes this Court from considering those grounds as the foundation for a reversal of his attempted-murder conviction, for which he received a sentence of less than death.”
730 So.2d at 665.[7]
Spradley argues that his conviction for intimidating a witness should be reversed for the following reasons.
A.
First, Spradley asserts that the indictment charging him with the offense of intimidating a witness, Alisha Booker, was defective. Specifically, Spradley argues that the indictment was vague because it did not identify the underlying case related to the intimidation; that it did not specify the official proceeding to which Booker had been summoned; and that it did not state the date of the alleged offense.
Initially, this Court notes that Spradley failed to preserve this issue for appellate review. In Lansdell v. State, 25 So.3d 1169, 1182 (Ala.Crim.App.2007), this Court held that a challenge to the sufficiency of an indictment does not implicate the jurisdiction of the circuit court; therefore, such claims must be preserved. See also Ex parte Seymour, 946 So.2d 536, 539 (Ala.2006) (holding that “[t]he validity of [an] indictment is irrelevant to whether the circuit court had jurisdiction over the subject matter of th[e] case[; therefore,] [a] defect in an indictment may be error, see Rule 15.2(d), Ala. R.Crim. P. — or even constitutional error, see Ala. Const., Art. I, § 8 — but the defect does not divest the circuit court of the power to try the case”); Ex parte Horton, 456 So.2d 1120, 1122 (Ala.1984) (holding that challenges to the sufficiency of the allegations in an indictment must be raised at trial); Gargis v. State, 998 So.2d 1092, 1099 (Ala.Crim.App.2007) (holding that defects in an indictment are nonjurisdictional and, thus, must be preserved for appellate review). Here, Spradley did not challenge the sufficiency of the indictment. Therefore, he failed to preserve this issue for appellate review.
Moreover, even if Spradley had preserved his challenge to the indictment, his allegations are without merit. The indictment charged Spradley as follows:
“Montez Spradley, alias Kevin Sprad-ley, whose name is to the grand jury otherwise unknown, did attempt, by use of a threat directed to Alisha Renea Booker, a witness or a person he believed would be called as a witness in an official proceedings, to-wit: State of Alabama vs. Montez Spradley, to induce Alisha Renae Booker to absent herself *794 from said official proceeding to which she had been legally summoned, a violation of Section 13A-10-123 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama.”
(C. 284.)
Section 13A-10-123, Ala.Code 1975, states:
“(a) A person commits the crime of intimidating a witness if he attempts, by use of a threat directed to a witness or a person he believes will be called as a witness in any official proceedings, to:
“(1) Corruptly influence the testimony of that person;
“(2) Induce that person to avoid legal process summoning him to testify; or
“(3) Induce that person to absent himself from an official proceeding to which he has been legally summoned.”
“Threat” is defined as criminal coercion, which in turn, is defined in § 13A-6-25, Ala.Code 1975, as follows:
“A person commits the crime of criminal coercion if, without legal authority, he threatens to confíne, restrain to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from doing a lawful act.”
In addressing the requirements for an indictment, § 15-8-25, Ala.Code 1975, provides:
“An indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.”
In Reese v. State, 456 So.2d 341 (Ala.Crim.App.1982), this Court stated:
“It is sufficient in an indictment to charge the elements of a statutory offense in the words of the statute. Gayden v. State, 262 Ala. 468, 80 So.2d 501 (1955); Wilder v. State, 401 So.2d 151 (Ala.Cr.App.), cert. denied, 401 So.2d 167 (Ala.1981). The only qualification to this rule is that the indictment must apprise the accused with reasonable certainty of the nature of the accusation against him, so that he may prepare his defense and then plead the judgment of conviction as a bar to any subsequent prosecution for the same offense.”
456 So.2d at 346. See also Owens v. State, 825 So.2d 861 (Ala.Crim.App.2001). “[U]n-der our system of pleading, indictments are rather a statement of legal conclusions, than of facts.... [I]t is not required that an indictment set up the proof necessary to a conviction.” Smith v. State, 797 So.2d 503, 514 (Ala.Crim.App.2000) (internal citations and quotations omitted).
The indictment charging Spradley with intimidating a witness tracked the language of the statute defining intimidation of a witness. Further, § 13A-10-123, Ala.Code 1975, prescribes with sufficient definiteness the essential elements of intimidating a witness. See Tompkins v. State, 898 So.2d 875, 877 (Ala.Crim.App.2004) (“An indictment[] that tracks the language of the statute is sufficient if the statute prescribes with definiteness the essential elements of the offense.”). Finally, the indictment was sufficient to put Sprad-ley on notice of the charged offense.
Because the indictment charging Sprad-ley with intimidating a witness tracked the language of the statute and put Spradley on notice of the charged offense, his allegation that the indictment was unconstitu *795 tionally vague is without merit. Therefore, this issue does not entitle Spradley to relief.
B.
Spradley next argues that there was a material variance between the indictment and State’s evidence. Specifically, Sprad-ley argues that a material variance exists because the indictment charged Spradley with attempting to “to induce Alisha Renae Booker to absent herself from said official proceeding to which she had been legally summoned,” (C. 284), pursuant to § 13A-10-123(a)(S), Ala.Code 1975, but the State failed to prove that Booker had been legally summoned; therefore, the State failed to establish that Spradley had “[c]orruptly influence[d] the testimony of that person,” pursuant to § 13A-10-123(a)(%), Ala.Code 1975. In other words, Spradley argues that a material variance exists because the State charged Spradley pursuant to one subsection of § 13A-10-123(a), Ala.Code 1975, but presented evidence that he was guilty pursuant to another subsection of the same statute. This issue is not preserved for this Court’s review.
In Shouldis v. State, 953 So.2d 1275, 1283 (Ala.Crim.App.2006), this Court held that issues relating to a variance between an indictment an the proof presented at trial must be raised at trial. Specifically, this Court held that “issues as to a variance between the indictment and proof ... are not preserved for review where they are not raised at trial.” Id. (quoting Biles v. State, 715 So.2d 878, 883 (Ala.Crim.App.1997), quoting in turn Turner v. State, 610 So.2d 1198, 1199 (Ala.Crim.App.1992)).
Here, Spradley failed to raise his argument relating to a variance in the circuit court. Therefore, this issue is not preserved for appellate review and does not entitle Spradley to relief.
C.
In a similar argument, Spradley asserts that there was insufficient evidence to support his conviction for intimidating a witness. Specifically, he argues that the State failed to prove that Booker had been summoned to a legal proceeding at the time she was threatened. This argument is without merit.
The Commentary to § 13A-10-123, Ala. Code 1975, states:
“Section 13A-10-123 may change Alabama law to the extent that actual knowledge that the person sought to be bribed is about to be called as a witness is no longer required.... Under the Criminal Code, the defendant need only have believed that the person sought to be bribed would be called.”
(Emphasis added.) See also Logue v. State, 529 So.2d 1064 (Ala.Crim.App.1988). Likewise, in Johnson v. State, 932 So.2d 979, 982-83 (Ala.Crim.App.2005), this Court held that “ § 13A-10-123, Ala.Code 1975, does not ... require that an official proceeding be pending before an accused can be convicted of intimidating a witness.” That is, “an official proceeding need not be pending for an accused to be convicted of intimidating a witness under § 13A-10-123; the only requirement is that the accused believe that the person he or she is accused of intimidating will ultimately be called as a witness in an official proceeding.” Id. at 983. Because “an official proceeding need not be pending for an accused to be convicted of intimidating a witness under § 13A-10-123,” Ala.Code 1975, id., the State is not required to submit evidence establishing that the victim has been summoned to an official proceeding. Instead, the State need only prove “that the accused believe[d] that the person he or she is accused of intimidating *796 [would] ultimately be called as a witness in an official proceeding.” Id.
Regarding the sufficiency of the evidence, this Court has explained:
“In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State. A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Duncan v. State, 436 So.2d 883 (Ala.Cr.App.1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984); Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala.1979).”
Breclcenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
Here, Booker testified that Spradley assaulted her for talking with law-enforcement officers about the murder case. She testified that Spradley told her not to go to court because she was a star witness and without her, the State would be unable to convict him. Spradley also told her he was going to kill her because she was going to send him back to prison.
Based on Booker’s testimony indicating that Spradley believed she would be a witness against him and that Spradley attempted to suppress her testimony, this Court concludes that the State presented sufficient evidence to sustain Spradle/s conviction for intimidating a witness. Therefore, Spradley is not entitled to any relief on this issue.
D.
Spradley lastly argues that the State erred in failing to elect which incident of intimidation should have been submitted to the jury. Specifically, he asserts that Booker’s testimony established that Sprad-ley threatened Booker on multiple occasions; therefore, the State should have been required to elect a specific incident to submit to the jury.
Spradley failed to preserve this issue for appellate review. He did not object to the State’s failure to elect a specific incident or move the circuit court to require the State to elect which incident it was preceding on before the case was submitted to the jury. “[B]eeause it does not appear from the record that [the defendant] requested that the State elect on which incident ... it was *797 basing the remaining charge, that claim is not preserved for appellate review. See Pierson v. State, 677 So.2d 830 (Ala.Crim.App.1996).” Shouldis v. State, 958 So.2d 1275, 1280 (Ala.Crim.App.2006). Accordingly, this issue is not preserved for this Court’s review and does not entitle Sprad-ley to any relief.
For the foregoing reasons, Spradley’s capital-murder conviction and his sentence of death are reversed and this cause is remanded for proceedings consistent with this opinion. Spradley’s conviction for intimidating a witness and his sentence of 20 years in prison are affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WELCH, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.

. Lt. Green did not testify at Spradley’s trial.

. Van Doe did not testify at Spradley’s trial.

. Because neither exhibit contains any statement by Spradley, compliance with this step was not necessary.

. Nothing in the opinion should be read as holding that State’s exhibits 49 and 50 would not be admissible in the future; however, the State must lay the proper foundation for these exhibits to be admitted into evidence.

. As discussed above, the State failed to lay the proper foundation for State's exhibits 49 and 50; therefore, the admission of these exhibits was improper.

. Although the document from the credit-card company may fall within the business-records exception to the hearsay rule, Rule 803(6), Ala. R. Evid., the State did not admit the document into evidence.

. In a footnote in Spradley’s brief, he argues that this Court should apply a plain-error analysis to his conviction for intimidating a witness because the two offenses were tried together. However, this Court is bound by the decisions of the Alabama Supreme Court. See § 12-3-16, Ala.Code 1975.